USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
SHERRY BENDER, *pro se*,                  :
                                          :
                    Plaintiff,            :
                                          :    09 CV 3286 (BSJ)
          v.                              :
                                          :
                                          :    **Memorandum & Order**
CITY OF NEW YORK, et. al.                 :
                                          :
                    Defendants.           :
------------------------------------------x
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE


     Before the Court are six motions to dismiss the Amended

Complaint of *pro se* Plaintiff Sherry Bender. For the reasons set

forth below, the motions are GRANTED in part and DENIED in part.

                          **BACKGROUND**

     The present case has a long and complicated procedural

history spanning numerous docket numbers and complaints.

Plaintiff's many lawsuits against various individual and

official defendants stem from her years-long feud with the 11th

St. Bar, an allegedly illegal tavern operating next door to her

apartment. Plaintiff alleges that her efforts to call attention

to the bar's illegal status have led to numerous retaliatory

incidents of false arrest and malicious prosecution, as well as

frequent violations of her state and federal constitutional

rights. Plaintiff alleges that the many harms she has

                              1

experienced are the result of a conspiracy among local zoning officials, members of the New York City Police Department, city prosecutors, other government officials and the bar's owners.

Defendants here seek dismissal of Plaintiff's amended complaint, which spans 159 pages and 545 paragraphs pleading 34 causes of action against at least 58 named and additional unnamed defendants. The amended complaint seeks to "supplement" Plaintiff's 61 page complaint (referred to here as the "original complaint") consisting of 220 paragraphs of allegations. It is worth noting that this Plaintiff has previously filed at least three other complaints, in case numbers 08 civ. 331, 08 civ. 332, and 08 civ. 5816, that were dismissed for failure to comply with the Court's order to file an amended complaint.[1]

As an initial matter, Plaintiff's unwieldy complaint violates the mandates of Rule 8(a) of the Federal Rules of Civil Procedure that a complaint contain a "short and plain statement" of those facts entitling a plaintiff to relief. This rule was instituted "because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant

---

[1] By letter to the Court dated August 21, 2011, Plaintiff makes her second request for additional time to respond to the present motions. However, Plaintiff's time to respond expired approximately eight months ago, after she was granted her first extension and explicitly warned that failure to respond would result in the Court deciding the motions unopposed. While Plaintiff offers numerous excuses for her failure to respond, none are sufficient for this Court to reconsider its prior order. Plaintiff's *pro se* status does not excuse her from following the Court's deadlines.

material from a mass of verbiage." Shabtai v. Levande, 38 Fed.

Appx. 684, 686 (2d Cir. 2002)(internal quotations and citations

omitted). Plaintiff's unwieldy complaint is especially

troublesome because she has had numerous opportunities to file

new and amended complaints throughout her many lawsuits.

Further, her styling of the amended complaint as a "supplement"

to her earlier complaint would require this Court to examine

hundreds of pages of allegations to construe her claims in the

strongest possible light. For this reason, the Court will rely

primarily on the allegations as plead in Plaintiff's lengthy

amended complaint. Where a cause of action is only pled in her

"original" complaint, the Court will accept the allegations as

plead there. In all other instances, Plaintiff's 155 pages of

allegations in her amended complaint should be more than

sufficient to adequately state her claims.

Because Plaintiff is pro se, this Court has interpreted

Plaintiff's claims to make the strongest arguments they can

plausibly suggest. Morpurgo v. Incorporated Village of Sag

Harbor, 697 F. Supp. 2d 309, 322 (E.D.N.Y. 2010). However, this

Court is also mindful that claims of a conspiracy to violate the

civil rights of an individual are "so easily made and can

precipitate such protracted proceedings with such disruption of

governmental functions" that detailed fact pleading is required

to withstand a motion to dismiss. Angola v. Civiletti, 666 F.2d

3

1, 4 (2d Cir. 1981). As the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

Given the length of Plaintiff's many allegations, the Court will only provide a limited factual background as required to analyze the issues raised by the present motions.

LEGAL ANALYSIS

**1. Claims under 42 U.S.C. §§ 1985 and 1986**

As an initial matter, Plaintiff pleads various causes of action (including but not limited to her second, third, and seventh causes of action) pursuant to 42 U.S.C. §§ 1985 and 1986 for conspiracy by various defendants for deprivation of her constitutional rights and for failure to act to remedy these violations. To state a claim for conspiracy to violate her constitutional rights under 42 U.S.C. § 1985, a Plaintiff must allege "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Mian v. Donaldson, Lufkin, & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993). Here, Plaintiff has not alleged that the alleged constitutional violations took place because of a racial or class-based discriminatory animus. Therefore, Plaintiff has

failed to state a cause of action as to her claims under 42 U.S.C. § 1985 and these claims are dismissed.

Because § 1986 provides a cause of action against anyone with knowledge of a § 1985 violation who neglects to act despite the power to provide relief, a §1986 claim must be predicated upon a valid § 1985 claim. Therefore, Plaintiff's failure to state a cause of action under § 1985 also requires dismissal of her claims pursuant to § 1986.

**2. Claims under Federal Criminal Statutes**

Plaintiff also makes numerous claims based on violations of federal criminal statutes, including fraud in violation of 18 U.S.C. § 1341, conspiracy in violation of 18 U.S.C. §§ 241-42, witness tampering in violation of 18 U.S.C. §§ 1512-13, and misprision of felony under 18 U.S.C. § 4. These federal criminal statutes do not provide a private right of action. See Zahl v. Kosovsky, 2011 WL 779784, at * 10 (S.D.N.Y. March 3, 2011)(no private right of action pursuant to 15 U.S.C. §1512); Wright v. Waterside Plaza LLC, 2008 WL 872281, at *2 (S.D.N.Y. Apr. 2, 2008)(generally no private right of action for federal criminal statutes, specifically mentioning 18 U.S.C. §§ 1513, 1341); Bender v. General Services Admin., 2006 WL 988241, at *1 (S.D.N.Y. Apr. 14, 2006)(no private right of action under 18 U.S.C. §§ 241, 242); Carvel v. Ross, 2011 WL 856283, at *12 (S.D.N.Y. Feb. 16, 2011)(no private right of action for

misprision of felony). Therefore, Plaintiff's claims under these federal criminal statutes are dismissed.

**3. False Arrest and False Imprisonment Claims under 42 U.S.C. § 1983**

Plaintiff asserts claims for false arrest and false imprisonment against the City of New York and numerous named and unidentified police defendants.

Standard for Claims under 42 U.S.C. § 1983

Section 1983 states provides in part that

> [e]very person who, under color of any statutes, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).[2] Section 1983 itself does not require any intent to violate constitutional rights; only where the underlying constitutional violation requires a showing of intent

---

[2] Plaintiff's numerous causes of action for constitutional violations are made under federal law, mostly under 42 U.S.C. § 1983. However, her twenty-ninth cause of action also states a general claim for "equal protection of laws, discrimination in civil rights prohibited motivated by animus, security against unreasonable searches, seizures and interceptions" under the New York State Constitution. Because Plaintiff has not plead specific violations of the New York State Constitution beyond this "catch all" cause of action, the Court will interpret her claims under the federal constitution and deal with all state law claims separately.

must a plaintiff demonstrate that the deprivation was
intentional. Hudson v. New York City, 271 F.3d 62, 68 (2d Cir.
2001). Further, to succeed on a Section 1983 claim, a plaintiff
must establish causation by showing that "defendants
participated in, or were 'moving forces' behind, the
deprivation." Jeffries v. Harleston, 21 F.3d 1238, 1247 (2d Cir.
1994), *vacated and remanded on other grounds*, 513 U.S. 996
(1994).

False Arrest and False Imprisonment

    Causes of action for false arrest are a "species of false
imprisonment" and therefore are subject to the same legal
analysis. Hargroves v. City of New York, 411 Fed. Appx. 378, 382
(2d Cir. 2011). Under New York law, a plaintiff must show that:
(1) the defendant intentionally confined the plaintiff; (2) the
plaintiff was conscious of the confinement; (3) the plaintiff
did not consent to the confinement; and (4) the confinement was
not otherwise justified. Singer v. Fulton Cty. Sheriff, 63 F.3d
110, 118 (2d Cir. 1995). Though Plaintiff pleads her false
arrest and false imprisonment claims as separate causes of
action, the Court will consider them together.

    The existence of probable cause is a complete defense to an
action for false arrest, even where a person is ultimately
acquitted. Bernard v. United States, 25 F.3d 98, 102 (2d Cir.
1995). Probable cause exists where the arresting officer has

"knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer, 63 F.3d at 119 (internal citations and quotations omitted). The probable cause inquiry focuses on the information available to the officer at the time of arrest; an officer's subjective intent is irrelevant. Espada v. Schneider, 522 F. Supp. 2d 544, 552 (S.D.N.Y. 2007).

Each claim will be considered in turn.

March 8, 2006 and March 15, 2006[3]

Plaintiff alleges that Defendants Detective Corcoran, P.O. Svenstrup, and P.O. Berol falsely arrested her on March 8 and March 15, 2006 without probable cause and in retaliation for her complaints against the alleged illegal bar. She further alleges that after the officers caused EMS to transport her to Bellevue Hospital for a psychiatric evaluation, the officers made false statements to Bellevue's staff that caused the doctors to retain her overnight all in violation of her constitutional rights under the Fourth Amendment. Defendants counter that probable cause existed for both arrests.

Plaintiff here alleges that Defendants Corcoran, Berol and Svenstrup provided false information to EMS, entered her

---

[3] Plaintiff's claims regarding her arrests and involuntary commitments on March 8 and March 15, 2006 are the only claims this Court relied on the original complaint to decide, as these claims are not plead in the amended complaint.

apartment "under threat of physical force, and falsely accused her of displaying symptoms of serious mental illness." (Original Complaint ¶¶ 53-88.) Construing Plaintiff's claims liberally and accepting her allegations as true, plaintiff has plead sufficient facts to allege that the officers arrested her without probable cause. Therefore, she has sufficiently stated claims for false arrest and false imprisonment under § 1983 against Defendants Svenstrup, Berol and Corcoran, and Defendants' motion to dismiss these claims is denied.

September 15-16, 2006

Plaintiff alleges that her arrest and subsequent imprisonment on September 15-16, 2006 also violated her constitutional rights under the Fourth Amendment. Plaintiff alleges that, after suffering from "harassment" by her neighbor (Defendant Samolsky), she heard Samolsky "speaking with police on his cell phone outside Plaintiff's door."[4] Plaintiff then left her apartment, walked outside onto the street, and moments later was arrested by several New York City police officers, including Defendants Mahoney and Corcoran, without a warrant. (Am. Compl. ¶¶ 145-46.) When asked why she was arrested, Plaintiff alleges that the officers informed her that she was being charged with "false reports . . . 268 counts;" Plaintiff asserts that the 311 calls she made were not false reports but "legitimate"

---

[4] Defendant Samolsky was served on June 1, 2010; however, he did not answer her complaint and has not appeared in this action.

complaints and that she made no 311 or 911 calls on that day.
(Am. Compl. ¶¶ 145, 159.) Plaintiff asserts that this arrest was
without probable cause because it stemmed from the ongoing
harassment of Plaintiff by NYPD officers under the command of
Defendant Corcoran, in collusion with Defendant Samolsky. (Am.
Compl. ¶ 389).

Interpreting Plaintiff's complaint broadly in light of her
*pro se* status and accepting the facts pled as true, Plaintiff
has sufficiently alleged that officers Corcoran, Mahoney and
Svenstrup all participated in her arrest without probable cause
as part of their ongoing harassment of her and in retaliation
for her complaints against the bar. Therefore, Plaintiffs'
motions to dismiss these claims are denied.

September 18, 2007

Plaintiff next claims that her arrest on September 18, 2007
by police Defendants DeQuatro, Corcoran, Mahoney and Svenstrup
violated her constitutional rights because it was premised on an
"illegal warrant" and lacked probable cause. (Am. Compl. ¶ 448).
However, where an arrest is made pursuant to a warrant, there
can be no claim for false arrest or wrongful imprisonment. This
is true even where a plaintiff claims that the warrant was
obtained on the basis of deliberate misrepresentations by
defendants. Jones v. Trump, 971 F. Supp. 783, 788-89 (S.D.N.Y.
1997). As Plaintiff has alleged that she was arrested pursuant

10

to a warrant, her claim for false arrest and subsequent false imprisonment on September 18, 2007 must fail. To the extent Plaintiff's claim for false arrest is premised upon Defendant Corcoran's role in obtaining the allegedly illegal warrant, Plaintiff's remedy would be a claim for malicious prosecution, as discussed further below. See Williams v. Young, 769 F. Supp. 2d 594, 602 (S.D.N.Y. 2011).

March 24, 2008

Plaintiff alleges that she was falsely arrested on March 24, 2008 by Detective Gomez in the New York County Criminal Courthouse. She asserts that Detective Gomez "falsely arrested" her in collusion with two other defendants (Samolsky and Meadows) who had been harassing her and had obtained orders of protection against her on that same day. (Am. Compl. ¶¶ 209, 469-73.) However, Plaintiff fails to specify any conduct by Gomez that would be sufficient to draw the inference that he colluded with Samolsky and Meadows and arrested her without probable cause. Rather, according to Plaintiff's complaint, he relied on the complaints of the victims of the alleged crimes, which is considered a presumptively reliable basis for finding probable cause. See Miloslavsky v. AES Engineering Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992). Further, in Plaintiff's own complaint, she contends that the arrest "originated with the prosecutor Reynolds," not Gomez. (Am. Compl. ¶ 472.) Plaintiff's

11

complaint is devoid of any allegation of Gomez's involvement
except that he was the officer who physically arrested
Plaintiff. Plaintiff's conclusory allegations that the arrest
was illegal and the result of collusion with the alleged victims
are insufficient to plead a claim for false arrest or false
imprisonment. Therefore, this claim is dismissed.

**4. Unlawful Search Claims under 42 U.S.C. § 1983**

September 18, 2007

Reading the complaint liberally, Plaintiff pleads a claim
for the illegal search of her apartment, which she terms a
violation of her privacy rights. Plaintiff claims that police
Defendants Corcoran, DeQuatro, Hernandez, and Torres unlawfully
searched her home pursuant to a warrant issued by Judge Ross on
September 11, 2007. (Am. Compl. ¶ 185.) Where a police officer
relies in good faith upon a warrant issued by a neutral and
detached magistrate upon a finding of probable cause, that
officer is "presumptively shielded by from personal liability
for damages." Spafford v. Romanowsky, 348 F.Supp.2d 40, 46
(S.D.N.Y. 2004)(citing Golino v. City of New Haven, 950 F.2d
864, 870 (2d Cir. 1991). However, if an officer "knows, or has
reason to know, that he has materially misled a magistrate on
the basis for a finding of probable cause," he may be liable
under § 1983. Id.(internal quotations omitted). Here, Plaintiff
makes no allegations that Defendants DeQuatro, Hernandez, and

12

Torres had any knowledge that the warrant was allegedly "illegal," and therefore Plaintiff's claims against them fail.

As to Defendant Corcoran, Plaintiff has sufficiently alleged that Corcoran supplied false information which led to the issuance of the search warrant. Accepting these facts as true for the purposes of this motion only, Plaintiff has adequately plead a claim for illegal search in violation of the Fourth Amendment against Defendant Corcoran.

Further, Plaintiff alleges that she was unlawfully strip searched upon her arrest on September 18, 2007 by a "not yet named female officer of the 9th Precinct." (Am. Compl. ¶ 462.) To comply with the Fourth Amendment, the strip search of a defendant in custody must be reasonable in light of the circumstances, including the scope of the particular intrusion, the manner in which such search was conducted, the justification for initiating the strip search, and the place it was conducted. Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006). Here, Plaintiff alleges that she was strip searched without good cause as a means of further harassment. Accepting these allegations as true, Plaintiff's claim is sufficient to survive a motion to dismiss.[5]

**5. Excessive Force Claims under 42 U.S.C. § 1983**

---

[5] The Court notes that the officer who Plaintiff alleges conducted the strip search is still unnamed. The Court makes no finding as to whether this claim is now time-barred.

September 15 and 16, 2006

Plaintiff alleges that she was subject to excessive force by two defendants during her arrest and transfer by Defendants Echavarria and Svenstrup, as well as unnamed "individual police defendants."

To establish a constitutional claim for excessive force, a plaintiff must allege conduct that was "objectively unreasonable" in light of the circumstances. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 467 (S.D.N.Y. 2008).

Defendant Ecchavarria allegedly "handcuffed the defendant extremely tightly for nearly fourteen hours leaving indentations in plaintiff's forearms for over six hours." (Am. Compl. ¶ 412.) Courts in this circuit have consistently found that "tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Lynch, 567 F. Supp. 2d at 467. Here, Plaintiff specifically alleges that the discomfort experienced from the handcuffing lasted for six hours. This qualifies as the kind of "temporary discomfort" that courts have consistently found cannot constitute a claim for excessive force. Therefore, this claim is dismissed.

As to the allegations against the "individual police defendants" that Plaintiff has failed to name or describe, she claims these individuals "turn[ed] plaintiff upside down, handcuff[ed] her multiple times, [and] physically assault[ed]

14

the plaintiff." (Id.) Without more detail as to the harm she suffered or the circumstances of this alleged "assault," the Court cannot find that Plaintiff has plead a plausible claim for excessive force. Therefore, this claim is also dismissed.

Additionally, Plaintiff alleges that immediately after her arrest, while putting her into the patrol car, Defendant Svenstrup "gave a definitive yank back and forth to [her] left thumb." Plaintiff asserts that this was "wholly unprovoked" and that she was tightly handcuffed during the incident. Svenstrup's conduct allegedly caused a tear in the ulnar collateral ligament of Plaintiff's left thumb and eventually required surgery. (Am. Compl. ¶ 146.) Such an injury, if true, could give rise to a claim for excessive force. Therefore, taking these allegations as true, Plaintiff has adequately plead a claim for excessive force against Defendant Svenstrup.

## 6. Malicious Prosecution Claims under 42 U.S.C. § 1983

Plaintiff alleges claims for malicious prosecution related to her arrests on September 15, 2006, September 18, 2007, and March 24, 2008.

### Police Defendants

Reading Plaintiff's complaint liberally, Plaintiff may have intended to plead a claim for malicious prosecution against the police defendants for their role in the prosecutions subsequent to her three arrests. To state a claim for malicious

15

prosecution, a plaintiff must allege the initiation of a criminal proceeding, the termination of the proceeding in Plaintiff's favor, a lack of probable cause for commencing the proceeding, and actual malice as motivation for defendant's actions. Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995). Courts have found that individuals other than prosecutors may be subject to claims for malicious prosecution where such individuals actively participated in the prosecution. For instance, plausible claims against police officers have been plead where a plaintiff alleges that the officer created false information and forwarded it to prosecutors, or completed complaining or corroborating affidavits used in the criminal prosecution. Espada v. Schneider, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007).

Plaintiff's complaint, while full of general allegations regarding a conspiracy to retaliate against her, is largely devoid of specific allegations of any police officer participating in her prosecution. However, Plaintiff does allege that Defendant Corcoran, along with Defendant ADA Reynolds, obtained an illegal warrant to search her home and to arrest her. (Am. Compl. ¶ 185, 446.) As mentioned above, while Plaintiff styles this a false arrest claim, such claims are properly assessed as claims for malicious prosecution. Williams, 769 F. Supp. 2d at 602. Plaintiff thus alleges that Corcoran

16

knowingly provided false testimony, in concert with the prosecutor, causing Plaintiff to be arrested pursuant to a warrant and eventually prosecuted. See Komlosi v. Fudenberg, 2000 WL 351414, at *10 (S.D.N.Y. Mar. 31, 2000). As Plaintiff has adequately pled the other elements required to state a claim for malicious prosecution, the Court finds that Plaintiff's claim for malicious prosecution against Defendant Corcoran survives this motion to dismiss.[6]

District Attorney's Office Defendants

Plaintiff also alleges that her malicious prosecution by ADA Reynolds and former District Attorney Robert Morgenthau violated her constitutional rights pursuant to § 1983.

Plaintiff's allegations detail the allegedly "vindictive" and intentionally malicious conduct of ADA Reynolds in repeatedly prosecuting Plaintiff. Plaintiff alleges that Reynolds made misrepresentations regarding evidence to Judge Gibbons and generally engaged in improper and biased prosecution of her while failing to prosecute those responsible for the nuisance created by the illegal bar.

While § 1983 "imposes liability upon 'every person' who deprives another of a constitutional right under color of state

---

[6] The Court has considered Defendants' argument that because Plaintiff's prosecution did not have a favorable outcome, she cannot sustain a claim for malicious prosecution. However, at this early stage, it is unclear how each of Plaintiff's criminal proceedings was resolved; she contends at least some charges were dismissed. (See Am. Compl. ¶ 204.) Therefore, the Court cannot find that dismissal of these claims is appropriate at this time.

law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." Day v. Morgenthau, 909 F.2d 75, 77 (2d Cir. 1990). Prosecutors are absolutely immune from liability for acts within the scope of their duties in "initiating and pursuing a criminal prosecution." Id. Only if a prosecutor acts act beyond his or her "jurisdictional limits" does the prosecutor lose this absolute immunity. Barr, 810 F.2d at 361. The Second Circuit has held that where a prosecutor acts in an "investigative" or "administrative" capacity and in the "clear absence of all jurisdiction" does he or she lose absolute immunity. Id. This is true even where a plaintiff alleges that the prosecutor acted for purposes of retaliation or knowingly used perjured testimony. Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005). "These principles are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy." Id. at 238.

Here, Plaintiff's exhaustive allegations against ADA Reynolds and former District Attorney Morgenthau contain many general allegations about Reynolds' alleged impropriety in bringing repetitive criminal charges, mischaracterizing evidence, and generally conspiring against her for the benefit of the bar owners. However, Plaintiff's allegations lack any mention of Reynolds engaging in administrative or investigative

18

functions. Conclusory allegations that defendants went "beyond the scope of their jurisdiction, without authority of law" are insufficient to withstand a motion to dismiss. (Am. Compl. 392). Furthermore, Plaintiff's allegations that Reynolds participated in the procurement of arrest and search warrants leading to her arrest are insufficient to pierce Reynolds' absolute prosecutorial immunity under Second Circuit case law.[7] Id. at 362. For these reasons, Defendants Morgenthau and Reynolds are absolutely immune from liability under § 1983, and Plaintiff's claims for malicious prosecution against them are dismissed.[8]

**7. Abuse of Process under 42 U.S.C. § 1983**

Plaintiff additionally pleads a claim for "official misconduct, misuse of process" against Defendants Corcoran, Torres, and Reynolds. (Am. Compl. ¶ 457.) Under New York law, to adequately allege a claim of malicious abuse of process a plaintiff must plead: "(1) defendants employed regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Jovanovic v. City of New

---

[7] Similarly, to the extent Plaintiff intended to plead a claim for false arrest against Defendant Reynolds, this claim fails due to Defendant Reynolds' absolute prosecutorial immunity.

[8] Further, Plaintiff fails to allege any personal involvement in her prosecution by District Attorney Morgenthau, further meriting dismissal of her claims against him. See Haygood v. City of New York, 64 F.Supp.2d 275, 279-80 (S.D.N.Y. 1999).

York, 2006 WL 2411541, at *11 (S.D.N.Y. Aug. 17, 2006). This
cause of action can give rise to a claim under § 1983. Id. Here,
Plaintiff's lengthy complaint only alleges Defendants Corcoran
and Reynolds played any role in obtaining any "legal process" to
use against her; Defendant Torres is only alleged to have
participated in the search of Plaintiff's apartment.

As discussed above, Reynolds is absolutely immune from
claims related to her use of legal process. Therefore, Plaintiff
has only plead a claim for malicious abuse of process by
Defendant Corcoran related to his allegedly false testimony
proffered to obtain a search and arrest warrant. Though her
allegations are largely conclusory, as this Court must liberally
construe her claims to allege the strongest possible arguments,
Plaintiff has sufficiently alleged that Corcoran had a
"collateral motive" for participating in the arrest under the
warrant, specifically to benefit the 11th St Bar and retaliate
against Plaintiff for her efforts to close the bar. See Id. at
*12, n.4 (discussing plausible "collateral motives" that have
been held sufficient to plead a claim for abuse of process).

## 8. Due Process Claims under 42 U.S.C. § 1983

Plaintiff's additionally alleges that her due process
rights were violated during her September 15-16, 2006 arrest by
Sgt. Acevedo and other officers. While Plaintiff styles this a
due process claim, the Court is unable to discern the basis for

20

Plaintiff's cause of action under any due process rights. Plaintiff's claims are therefore construed as claims for harassment constituting excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 and prolonged confinement in violation of the Fourth, Fifth and Fourteenth Amendments.

In support of her harassment claims, Plaintiff alleges that the officers ordered that Plaintiff be taken to a psychiatric facility because "we don't house psychs here." (Am. Compl. ¶¶ 154-54.) She further asserts that the officers caused her to be repeatedly transferred between police precincts, Bellevue, and Elmhurst Hospital, threatened to shackle her, and deliberately caused her suffering and fear. (Id.) However, the bulk of Plaintiff's allegations against Acevedo and the other unnamed officers are merely threats. As a matter of law, verbal abuse, including threatening language and gestures, cannot amount to constitutional violations. Smith v. Fields, 2002 WL 342620, at *5 (S.D.N.Y. Mar. 4, 2002).

In support of her prolonged confinement claim, Plaintiff alleges that Acevedo was responsible for her delayed arraignment because he sent her to Bellevue and Elmhurst Hospitals for a psychiatric evaluation and generally caused her to be transported numerous times during her confinement. Plaintiff has not alleged sufficient facts regarding Sgt. Acevedo's conduct

21

for this Court to reasonably infer that he should be held responsible for any delays in her arraignment. Therefore, Plaintiff's allegations of due process violations against Acevedo and other officers are dismissed.

To the extent Plaintiff has made a more general claim that her alleged 31 hour confinement on September 15 and 16, 2006 itself constituted a violation of her due process and Fourth Amendment rights, this claim also fails because Plaintiff's pre-arraignment detention was less than 48 hours. See Simmons v. Kelly, 2009 WL 857410, at *6 (S.D.N.Y. Mar. 31, 2009)(pre-arraignment detentions of up to forty-eight hours do not constitute violations of the Fourth Amendment).

**9. Claims against Dr. Jennifer Rosner, Dr. Richard Rosner, and Dr. Ankur Saraiya under 42 U.S.C. § 1983**

Plaintiff alleges a claim for "conspiracy against rights, obstruction, depraved indifference, recklessness, and malpractice" against the three doctor defendants who conducted her forensic competency exam at Bellevue Hospital, as ordered by Judge Gibbons on March 24, 2001. Plaintiff alleges that the doctors were "rude," "asked inappropriate questions," refused to allow her to use the bathroom, and were otherwise "harassing" in their interview. (Am. Compl. ¶ 221.) Plaintiff further alleges that the doctors' diagnoses that she was "unfit, incapacitated, mentally diseased, and unfit to stand trial" were willfully

22

false and constituted medical malpractice. Defendants allegedly lied on the witness stand at her criminal competency hearing. (Am. Compl. ¶ 279.)

Claims for medical malpractice are governed by state law. As such, "allegations of malpractice will not suffice to support an action under 42 U.S.C. § 1983." Warheit v. City of New York, 2006 WL 2381871, at *10 (S.D.N.Y. Aug. 15, 2006)(internal quotations and citations omitted). Therefore, Plaintiff cannot state federal causes of action under § 1983 for medical malpractice. Furthermore, accepting all of Plaintiff's allegations against the doctors as true, Plaintiff has not alleged any conduct that could rise to the level of a constitutional violation; experiencing "rude" and unpleasant behavior, and disagreeing with the conclusions of a medical expert, do not allege a sufficient deprivation of Plaintiff's constitutional rights. Therefore, Plaintiff's federal claims against Defendants Jennifer Rosner, Richard Rosner, and Ankur Saraiya are dismissed.

**10. Claims related to the Zoning of the 11th St. Bar under 42 U.S.C. § 1983**

Plaintiff additionally seeks to assert claims of constitutional violations related to the zoning and policing of the 11th St. Bar. These claims include: failure to protect Plaintiff from harassment by other individuals, failure to

23

protect her from the illegal 11th St. Bar, improper issuance of permits to the bar, failure to investigate violations of law by the bar, and deprivation of her property rights. She brings these claims against various city officials from departments including the Department of Buildings ("DOB), Department of Investigations ("DOI"), Department of Environmental Protection ("DOEP"), New York City Council, and Plaintiff's local community board. She also brings such claims against state officials from the New York State Liquor Authority ("NYSLA"). Plaintiff also brings claims against Mayor Michael Bloomberg, Governor Andrew Cuomo, and New York Police Commissioner Raymond Kelly, among others.[9]

These claims fail to state a claim to relief because Plaintiff does not have constitutionally protected rights to be free of the various harms Plaintiff alleges.

There is no judicially cognizable right to the prosecution of another individual, nor is there a constitutional right to government assistance from the various city officials and organizations Plaintiff names in this lawsuit. Leeke v Timmerman, 454 U.S. 83, 85-85 (1981)(private citizen has no

_____

[9] The Court construes Plaintiff's claims against the various state officials as claims against them in their individual capacity, recognizing that they are immune from suit in their official capacity. See Evans v. N.Y. State Dept. of Health, 189 F.3d 460, 460 (2d Cir. 1999) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983.") (citation omitted).

right to the prosecution or nonprosecution of another individual); Laupot v. City of New York, 2002 WL 83673, at *2 (S.D.N.Y. Jan. 18, 2002)(dismissing plaintiff's claim against City of New York and NYPD for failure to prosecute individual pursuant to noise complaints and allegations of harassment; plaintiff failed to allege a deprivation of any constitutionally protected right); Stone v. Department of Investigation of City of New York, 1992 WL 25202, at *2 (S.D.N.Y. Feb. 4, 1992)("there is no constitutional right to an investigation by government officials").

Further, to state a substantive due process claim for deprivation of a property right, a plaintiff must establish a valid property interest in the action or benefit sought. Then, a plaintiff must show that defendants infringed on that right in an arbitrary or irrational manner. Rosendable v. Iuliano, 2002 WL 215656, at *5 (S.D.N.Y. Feb. 13, 2002). "A plaintiff does not ordinarily have an entitlement to the benefit sought if the local regulator has discretion with regard to the benefit at issue." Id. Under New York law, decisions regarding the enforcement of zoning and building codes "rest in the discretion of the public officials charged with enforcement." Id. Where, as here, a governmental entity retains discretion over zoning decisions, an individual cannot allege a due process violation, even if the governmental entity makes the wrong decision. Id.

"Federal Courts should not become zoning boards of appeal."
<u>Harlen Associates v. Incorporated Village of Mineola</u>, 273 F.3d
494, 505 (2d Cir. 2001).

Moreover, Plaintiff cannot seek redress from the
administrative action of the Department of Buildings and other
city departments in federal court. In Article 78 of the Civil
Practice Law and Rules, New York law establishes a procedure by
which an individual can seek review of an administrative action.
However, such proceedings must be brought in the supreme court
of the relevant county. Federal courts lack jurisdiction to hear
such claims. <u>Blach ex rel Clay v. Hernandez</u>, 360 F. Supp. 2d
595, 638 (S.D.N.Y. 2005). Therefore, to the extent Plaintiff's
claims are properly construed as an attempt to challenge
decisions of administrative actions by state or city
governmental entities, those claims must be dismissed.

Finally, to the extent Plaintiff attempts to allege that
the actions of defendants deprived her of her property rights
without due process, such a claim fails. First, Plaintiff has
not adequately alleged the type of injury associated with
constitutional violations. Further, where state courts provide a
remedy for the alleged deprivation of a property interest and
the alleged violation is not based on a state or city-wide
policy, the due process claim necessarily fails in federal

court. See Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877, 880-81 (2d Cir. 1996).

**11. Claims against Remaining City Defendants under 42 U.S.C. § 1983**

Because the causes of action related to the bar/zoning grievances were the only claims plead against these defendants, for the reasons stated above Plaintiff's claims against Defendants Department of Investigations Inspector General Michael Carrol, DOI Investigator Dennis Curran, DOI Commissioner Rose Gill Hearn, DOI Assistant Inspector General Michael Healy, DEOP Commissioner Caswell Holloway, DOI Investigator Kristen Krause, DOB Commissioner Robert Limandri, DOB Assistant Chief Direction of Investigations James McElligott, City Councilwoman Rosie Mendez, ADA and Community Board 3 Member Alexandra Militano, DOB Assistant Commissioner Christopher Santulli, DOB Executive Engineer Mahner Shah and Community Board 3 Director Susan Stetzer are dismissed. See, infra, pp. 23-26.

Plaintiff's claims against Defendants Detective Hernandez, New York City Police Commissioner Kelly, Officer Kempf, and Mayor Michael Bloomberg are dismissed for failure to sufficiently allege personal involvement, which is a prerequisite to an award of damages under § 1983. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948-49 (holding that absent vicarious liability, each government official is only responsible for his

or her own misconduct). Plaintiff has failed to allege any facts

alleging any personal involvement these defendants had in

Plaintiff's alleged violations.

Additionally, Plaintiff's complaint alleges claims against

various police defendants who played only a minor role in her

various constitutional violations, namely Sergeant Brown (warned

Plaintiff that if officers returned to her apartment she would

be taken to Bellevue)(Am. Compl. ¶ 111), Sergeant Miranda

(failed to adequately respond to noise complaints and stated

Plaintiff was emotionally disturbed)(Am. Compl. ¶ 103), Officer

Schack (was present when another officer allegedly threatened

Plaintiff and transported Plaintiff to Court for

arraignment)(Am. Compl. ¶ 147), and Deputy Inspector Dennis

Dequatro (allegedly allowed harassment at Ninth Precinct to

continue and ignored Plaintiff's complaints)(Am. Compl. ¶¶ 109,

337).[10] Taking Plaintiff's allegations as true, the allegations

against these Plaintiff could not rise to the level of a

deprivation of constitutional rights under § 1983. Therefore,

---

[10] See Younger v. City of New York, 480 F. Supp. 2d 723, 731 (S.D.N.Y. 2007)("a
Defendant who occupies a supervisory position may be "personally involved" in a
deprivation of constitutional rights in several ways, including: (1) directly
participated in the infraction; (2) after learning of the violation, failing to
remedy the wrong; ... (4) being grossly negligent in managing subordinates who
caused the unlawful condition or event; or (5) demonstrating "gross negligence" or
"deliberate indifference" to the constitutional rights of an individual by having
actual or constructive notice of unconstitutional practices and failing to act.")
Plaintiff has failed to allege any specific facts to sustain a claim against
DeQuatro under any of these theories of liability. Her general accusation that he
failed to act is not sufficient to survive a motion to dismiss. Further, to the
extent Plaintiff alleges that DeQuatro allowed the "illegal" bar to continue
operating, for the reasons discussed above, this does provide a basis for a
Section 1983 claim. See, infra, pp. 23-26.

these defendants are also dismissed for failure to state a plausible cause of action.

## 12. Claims against State Defendants

Plaintiff alleges claims against seven individual New York state defendants: New York State Liquor Authority (NYSLA) Chairman Commissioner Dennis Rosen, NYSLA Commissioner Jeanique Greene, NYSLA Commissioner Noreen Healey, NYSLA Investigator Marvin Levine, NYSLA Investigator John Watts, former New York City Criminal Court Judge James Gibbons, and Governor Andrew Cuomo.[11]

Defendants Rosen, Healey, Greene, and Cuomo are named in the amended complaint only for their failure to act against the 11th St Bar. Plaintiff alleges that because these individuals hold senior positions of authority in the state government, they should be held liable for their failures to rectify the illegal bar operated next to Plaintiff's apartment. For the reasons stated above, these public officials cannot be held liable under §1983 absent allegations of personal wrongdoing. As Plaintiff has not alleged any personal involvement against these defendants, her claims against them are dismissed.

---

[11] As stated previously in footnote 9, Plaintiff's claims against state officials can only be maintained as claims against these officials in their individual capacity. State officials acting in their official capacity are immune from suit under § 1983. See Evans, 189 F.3d at 460.

29

Defendant Levine allegedly "culpably conferred with representatives of the 9th Precinct NYPD Jurisdiction and determined not to launch an investigation into the illegal bar next to Plaintiff's apartment." (Am. Compl. ¶ 140.) As stated above, Plaintiff has failed to allege a federally cognizable cause of action regarding the allegedly illegal failure to shut down the bar. Therefore, Levine cannot be held liable for this conduct, and the claims against him are dismissed. See, infra, pp. 23-26.

In addition to general allegations similar to those plead against Levine, Plaintiff also alleges that Watts "turned into a deponent" and testified falsely in the subsequent criminal case against the Plaintiff. Watts also allegedly failed to testify truthfully as to the illegal nature of the bar; Plaintiff alleges the false testimony was "with willful intent to deprive plaintiff of her rights." (Am. Compl. ¶ 189.) Interpreting Plaintiff's claims liberally, Plaintiff's complaint could be read to allege that Watts was therefore also responsible for the malicious prosecution against her. As a public official testifying as a non-party witness in a judicial proceeding, however, Watts enjoys absolute immunity from a suit from damages arising from his allegedly false testimony. Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

Finally, Plaintiff alleges numerous instances of misconduct by Judge Gibbons, who presided over her criminal proceeding. Plaintiff alleges that he acted "unconstitutionally and outside of his jurisdiction ... by willfully, wantonly, intentionally and cruelly delaying the malicious prosecution by ordering a ... competency hearing." (Am. Compl. ¶ 483.) A judge is entitled to judicial immunity from a suit for damages "if at the time he took the challenged action he had jurisdiction over the subject matter before him." Huminksi v. Corsones, 396 F.3d 53, 74-75 (2d Cir. 2005). Merely acting "in excess" of his or her jurisdiction is insufficient; judicial immunity will only be removed if the judge acted "in the absence of all jurisdiction." Id. Allegations of bad faith or malice are insufficient to overcome judicial immunity. Id.

Here, Plaintiff's exhaustive allegations do not assert that any of Judge Gibbons' alleged misconduct occurred outside of his judicial function. Accepting Plaintiff's allegations as true, including that Gibbons made mistakes in applying the law, acted with malice and bias against her, conducted a wrongful and one-sided competency hearing, and ultimately imposed a wrongful "diagnosis" and sentence, Plaintiff has failed to make any allegation that he acted in absence of his judicial function. Therefore, all claims against Judge Gibbons are dismissed.

**13. Municipal Liability Against New York City and New York State under 42 U.S.C. § 1983**

Plaintiff also seeks to plead claims for municipal liability against the City of New York and New York state for the various constitutional violations she alleges were perpetrated by city and state officials.

As an initial matter, the State of New York is immune from these claims under the Eleventh Amendment to the United States Constitution. Barrington v. New York, 2011 WL 3792395, at *5 (S.D.N.Y. Aug. 26, 2011)(citing In re Charter Oak Assocs., 361 F.3d 760, 765 (2d Cir. 2004). Therefore, all claims against New York State are dismissed.

As to Plaintiff's claim against the City of New York, to establish such a claim, a Plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional violation." Bohmer v. New York, 2011 WL 2651872, at *3 (S.D.N.Y. Jun. 16, 2011). Courts in this circuit have repeatedly held that "boilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of the plaintiff's rights are insufficient." Id. As discussed above, Plaintiff makes numerous vague allegations of a broad conspiracy to benefit the 11th St. Bar and retaliate against her. She further alleges that the city was negligent in hiring and supervising the offending employees. (See Am. Compl. ¶¶ 525-

530.) However, none of these allegations comes close to sufficiently alleging that that the City had a policy to hire, retain, and train police officers to engage in harassment, malicious arrests, unlawful searches, or any of the other myriad violations Plaintiff alleges. Therefore, Plaintiff's claim of municipal liability against New York City fail.

**14. Claims against Private Defendants under 42 U.S.C. § 1983**

11th St. Bar Defendants

Plaintiff alleges that Defendants RIP Construction, Hinkley, and Salvesen participated in the construction and permitting of the illegal bar next to her apartment. (Am. Compl. ¶¶ 81-84.) For the reasons stated above, Plaintiff has failed to plausibly allege any constitutional violation or federal claim related to the allegedly illegal construction, zoning, and permitting of the bar. Therefore, Plaintiff's claims against RIP, Hinkley and Salvesen are dismissed.

Plaintiff pleads similar claims against Defendants 510 East 11th Street LLC, 510 East Corporation, John Griffin, Martin Sheridan, Roger Herr, Gerard Walker, Robert Perl, Tower Brokerage Inc., New York Realty Management, Ear Inn, Inc., Steven Grace, Jim Cross Engineering, and Marc Berger. These Defendants are associated (as owners, investors, etc.) with the bar that is the subject of Plaintiff's suit.

33

As a preliminary matter, to state a claim under § 1983
against a private actor, a plaintiff must allege that the
individual acted under color of state law, by acting together
with or obtaining significant aid from a state official to
commit the constitutional violation. Zemsky v. City of New York,
821 F.2d 148, 151 (2d Cir. 1987). Here, the only possible bases
for a constitutional violation from the various incidents
alleged by Plaintiff are those involving her arrest, prosecution
or imprisonment. As stated above, the Plaintiff has not alleged
constitutional violations related to the zoning, operation, or
permitting of the bar. Because Plaintiff only alleged
allegations of personal involvement in her criminal prosecutions
by defendants Griffin and Herr, Plaintiff's federal claims
against 510 East 11th Street LLC, 510 East Corporation, Martin
Sheridan, Gerard Walker, Robert Perl, Tower Brokerage Inc., New
York Realty Management, Ear Inn, Inc., and Marc Berger are
dismissed.

Plaintiff alleges that Defendant Griffin was named as a
complainant in one of the criminal prosecutions of Plaintiff and
that he made false reports to police and/or 911 resulting in her
continued harassment. Plaintiff also alleges that Defendant Herr
made 911 calls about the Plaintiff that led to her arrest and
harassment.

Under § 1983, a private actor can be found to act under color of state law if: (1) the state compelled the private party's conduct, (2) the private party acted jointly with the state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state," or if the private party conspires with state actors to deprive someone of his or her constitutional rights. Baez v. Jet Blue Airways, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010). To make such a finding, there must be a close nexus between the private actor and state actor. Moreover, providing false information to a law enforcement official does not make a private individual liable under § 1983. Id. Rather, "a longstanding pattern of repeated lies and false accusations made for the purpose of procuring an arrest may constitute state action." Here, while Plaintiff makes vague allegations of a conspiracy between the bar owners and police, she does not allege facts to establish the "close nexus" required to plead § 1983 claims against Herr and Griffin. Her allegations that Herr made "false statements as a deponent and false 911 calls," that Griffin laughed with another defendant about Plaintiff's arrest, and that Griffin acted as a complaining witness in her prosecution in cooperation with ADA Reynolds do not suffice to establish that Defendants' action could fairly be treated as that of the state itself. (Am. Compl.

¶¶ 168, 191, 304.) See Chodkowski v. City of New York, 2007 WL
2717872, at *8-*9 (S.D.N.Y. Sept. 11, 2007).

Defense Attorney Brostowin

    Plaintiff's complaint includes numerous allegations of
collusion and violations of her civil rights by Defendant
Brostowin, her defense attorney. Plaintiff suggests that
Browstowin's poor defense of her was the result of his collusion
with ADA Reynolds. (See, e.g., Am. Compl. ¶ 302, 331.) Courts
have noted that where the allegedly conspiring parties have an
"adversarial relationship," allegations of a conspiracy are
especially implausible. Plaintiff here offers no facts to
support the inference that Defendant Browstowin conspired with
prosecutors or police. See Flores v. Levy, 2008 WL 4394681, at
*10 (E.D.N.Y. Sept. 23, 2008)(citing numerous cases where
allegations of conspiracy between defense attorney and
prosecutor found to be implausible). Most of Plaintiff's
allegations of "conspiracy" seem more plausibly read as a list
of Plaintiff's grievances for her attorney's allegedly poor
representation. Accordingly, Plaintiff's allegations are
implausible and insufficient to allege a constitutional injury;
legal malpractice does not constitute a constitutional

violation. Therefore, Plaintiff's claims against Browstowin are dismissed sua sponte.[12]

## 15. State Law Claims

In addition to her many federal claims, Plaintiff also pleads numerous claims under either common law or New York State law. Here, all of Plaintiff's federal claims surviving the motions to dismiss relate to her claims of false arrest, false imprisonment, malicious prosecution, and misuse of process. Given that many of Plaintiff's causes of action are dismissed, this Court must consider whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

This Court has attempted to discern which of Plaintiff's state law claims correspond to her surviving federal claims. And, the Court has attempted to parse through this rambling, disorganized, and extraordinarily lengthy complaint to plead the strongest possible arguments. However, Plaintiff's state law claims are particularly confusing in that they are exceedingly vague as to which events form a basis for which cause of action. (See, e.g., Plaintiff's Twenty-Ninth cause of action, Am. Compl. ¶¶ 518-23.) Accordingly, these claims lack specific factual allegations upon which this Court could determine whether

---

[12] The Court notes that while Plaintiff has filed proof of service of Defendant Brownstowin, he has not answered the complaint or appeared in this action to date. Nevertheless, because Plaintiff has not adequately stated claims against Defendant Brownstowin, the Court dismisses such claims sua sponte.

supplemental jurisdiction should be exercised. Without a basis
to determine that a "common nucleus of fact" exists, this Court
cannot find any of Plaintiff's claims to properly fall under our
supplemental jurisdiction. Therefore, all of Plaintiff's state
law claims are dismissed without prejudice.

**16. Failure to Serve**

Plaintiff has also failed to serve Defendant Hamilton
Meadows; no proof of service has been filed on the docket as of
the entry of this order. As Plaintiff has not requested more
time to properly effect service, her deadline to serve
defendants expired on July 21, 2010 (120 days after her filing
of the latest amended complaint) to effect service. Plaintiff's
claims against Defendant Meadows will be dismissed sua sponte
under Federal Rule of Civil Procedure 4(m) if she fails to file
proof of service with the Court within thirty days of the entry
of this order. See Sims v. New York City Dept. of Parks and
Recreation, 2010 WL 46370, at *2 (S.D.N.Y. Jan. 6, 2010).

**17. Summary**

To summarize, Plaintiff has adequately pled the following
claims for false arrest and/or imprisonment: March 8, 2006
against Corcoran, Berol and Svenstrup, March 15, 2006 against
Corcoran and Svenstrup, and September 15, 2006 against Corcoran,
Svenstrup and Mahoney. Plaintiff has pled a malicious
prosecution claim for Corcoran's conduct related to her

38

September 18, 2007 arrest and subsequent prosecution. Plaintiff has also adequately pled an excessive force claim against Svenstrup related to the injury allegedly sustained by Plaintiff on September 15, 2006. Plaintiff has pled a claim for an illegal strip search on September 18, 2007 against a yet unnamed female officer. Finally, Plaintiff has pled a claim for an illegal search against Corcoran related to the September 18, 2007 search of her apartment.

The Court dismisses all claims against all remaining defendants except Defendant Samolsky, who the Court understands was properly served, has not answered, and did not move to dismiss, and Defendant Meadows, whom Plaintiff has thirty days to serve.

### CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are GRANTED in part and DENIED in part. **Plaintiff is directed to contact Magistrate Judge Peck's chambers to schedule a status conference within 30 days of the entry of this order. Failure to do so will result in the dismissal of this action.**

SO ORDERED:

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:     New York, New York
           September 14, 2011